FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 22, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JARED JACKSON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>LIVE NATION WORLDWIDE INC, a Delaware Corporation; CONSCIOUS ENTERTAINMENT GROUP LLC, a Washington Limited Liability Company;<br><br>　　　　　Defendants. | No.　2:20-cv-00233-SMJ<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT** |

Before the Court is Defendants' Motion for Summary Judgment, ECF No 43. After hearing oral argument on the motion and reviewing the file, the Court is fully informed and finds that Defendants have not met their burden of demonstrating that there are no genuine disputes of material fact. As such, the Court denies the motion for summary judgment.

## BACKGROUND

Defendant Live Nation, via a long-term lease, owns and operates the music performance facility known as "The Gorge" in George, Washington. ECF No. 56-14 at 3. Live Nation contracted with Defendant Conscious Entertainment Group ("CEG") to put on the 2017 Paradiso Festival, an electronic dance music festival.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT – 1

ECF No. 56-15. The festival had multiple stages on which to perform. ECF No. 56-11 at 4. The stage at issue here, which was not the main stage, was known as the "Wreckage" stage, as it was built to resemble the crash-landing site of a small plane in a tropical jungle. *Id.*; ECF No. 56-5 at 1.

Defendant CEG was the lead event producer for the 2017 Paradiso Festival and was tasked with, among other things, hiring talent and managing production design. ECF No. 56-15 at 2. The stage was designed by Chad Craig, dba A Way of Life Productions, dba AWOL Productions, with CEG having final design approval before sending the designs to its engineering firm, Clark Reder. *Id.* at 3; ECF No. 56-9 at 6. For its part, Live Nation hired engineer Karl Sutter of Kimley-Horn to evaluate the stages before the event began. ECF No. 56-14 at 6.

Although the initial stage design was designed for stationary musical performances, a different design was ultimately approved with additional staging to be built off the front of the stage—a feature known as an "ego thrust." *Id.* at 9. Defendants argue that the extra feature was added at the request of Plaintiff's musical group, Keys N Krates, but Plaintiff disputes this.[1] *See* ECF No. 57 at 2. Regardless, this request created a gap in the stage, to the side of the ego thrust. *Id.* According to the stage's designer, CEG later asked the for a flat stage design,

---

[1] Plaintiff is the sound engineer and tour manager for the group. He was also often the production manager, but not for the 2017 Paradiso Festival. *See* ECF No. 57 at 3.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT – 2

because Keys N Krates was going to give a "live" performance, as opposed to, the more typical stationary DJ performance. *Id.* at 10. The stage designer ultimately produced the requested flat stage design, which did not have the "gap" into which Plaintiff eventually fell, ECF No. 56-4 at 4, but the final plans stamped by engineering firm Clark Reder and built at the 2017 Paradiso Festival used the older design, which had the gap, *id.* at 7.

Plaintiff Jackson stood on the stage the day before his injury and on the day of his injury, as late as 2:30 in the afternoon. At the time, he "was aware of many, many gaps and/or missing sections of 4-by-8 or 8-by-8 stage on the stage that day leading up to [the performance]." ECF No. 38 at 29. He "believe[s]" that the gap he ultimately fell in was there at 2:30 in the afternoon. He also acknowledges that "every time you get on a stage there is a risk." ECF No. 38 at 24. He has seen a dozen incidents that he can "vividly remember or my memory could be jogged for" of people falling off a stage. *Id.* at 24–25. "From the moment we arrive I knew that there were areas that were either askew, elevated, missing, yes." *id.* at 26. He knew that these areas "absolutely could" pose a potential danger and was worried about them. *Id.*

In Jackson's declaration, attached to his response, he clarifies:

> Since I had complained to multiple people during the sound check seven hours earlier about the missing stage deck pieces, and that those were safety concerns that needed to be fixed, and the fact that I had been told that more stage decking was coming, I assumed that the gaps

ORDER DENYING MOTION FOR SUMMARY JUDGMENT – 3

had been filled with stage decking prior to falling into the hole. I was worried and concerned about the various gaps on the stage that I saw during the sound check, but assumed that they had been fixed prior to Keys N Krates performance starting.

ECF No. 57 at 2.

Plaintiff Jackson, who worked hundreds of shows with Keys N Krates, stationed himself, crouched down with his iPad, far stage right to serve as sound engineer for Keys N Krates' 10:00 P.M. show. *See* ECF No. 57 at 2. At some point, while holding the iPad in his left hand, he took a video with this phone. Around 10:30 P.M., the band's drummer signals to Plaintiff that something is wrong. Plaintiff then locked the tablet and runs—not sprinting, but "crouched a bit lower and running towards the drummer," "looking him in the eye." ECF No. 38 at 28. As he's running, he falls into the gap, suffering injury. He sued in negligence, seeking monetary damages. Now, Defendants Live Nation and CEG move for summary judgment on three grounds. *See* ECF No. 43 at 2–3. Defendants Live Nation and CEG, in their reply, also moved for an adverse inference due to spoliation and to strike Plaintiff Jackson's declaration. ECF No. 86.

## LEGAL STANDARD

**A.    Summary Judgment**

Courts must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could affect the suit's

ORDER DENYING MOTION FOR SUMMARY JUDGMENT – 4

outcome under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if a reasonable jury could find for the nonmoving party based on the undisputed evidence. *Id.* The moving party bears the "burden of establishing the nonexistence of a 'genuine issue.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." *Id.*

B.   **Washington Negligence and Premises Liability**

To establish negligence, a plaintiff must prove four basic elements: (1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause. *Musci v. Graoch Associates Ltd. P'ship No. 12*, 31 P.3d 684, 854 (Wash. 2001). Whether a duty exists is a question of law. *Hutchins v. 1001 Fourth Ave. Assocs.*, 802 P.2d 1360, 1362 (Wash. 1991).

In premises liability actions, a person's status, based on the common law classifications of persons entering upon real property—invitee, licensee, or trespasser—determines the scope of the duty of care owed by the possessor of that property. *Van Dinter v. Kennewick*, 846 P.2d 522, 524 (Wash. 1993); s*ee generally* W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser & Keeton on Torts §§ 58–61 (5th ed. 1984) (hereafter Prosser & Keeton on Torts).

ORDER DENYING MOTION FOR SUMMARY JUDGMENT – 5

A "business invitee" is a person who is "'invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.'" *Younce v. Ferguson*, 724 P.2d 991, 996 (Wash. 1986) (quoting Restatement (Second) Of Torts § 332(3) (1965)). An invitation can be either express or implied permission gathered from the words or conduct of the landowner. *Afoa v. Port of Seattle*, 296 P.3d 800 (Wash. 2013) (citing Restatement (Second) Of Torts § 332 cmt. c.).

In contrast to what a licensee may expect, an invitee "is . . . entitled to expect that the possessor will exercise reasonable care to make the land safe for his [or her] entry." Restatement (Second) of Torts § 343, comment b. Reasonable care requires the landowner to inspect for dangerous conditions, "followed by such repair, safeguards, or warning as may be reasonably necessary for [the invitee's] protection under the circumstances." Restatement (Second) of Torts § 343, comment b.

Under Restatement (Second) of Torts § 343A,

> "(1) A possessor of land is not liable to . . . invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor "should anticipate the harm despite such knowledge or obviousness."

Restatement (Second) of Torts § 343A(1). At the same time, the Washington Supreme Court has endorsed comment f:

> [R]eason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be *distracted*, so that he [or she] will not

ORDER DENYING MOTION FOR SUMMARY JUDGMENT – 6

> discover what is obvious, or *will forget* what he [or she] has discovered, or fail to protect . . . against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable [person] in [that] position the *advantages* of doing so would *outweigh the apparent risk.*

Restatement (Second) of Torts § 343A, comment f (1965) (emphasis in *Ticani v. Inland Empire Zoological Soc.*, 875 P.2d 621, 631 (Wash. 1994)). "Distraction," the Court continued, "forgetfulness, or foreseeable, reasonable advantages from encountering the danger are factors which trigger the landowner's responsibility to warn of, or make safe, a known or obvious danger." *Ticani*, 875 P.3d at 631.

The Restatement (Second) of Torts § 330 (1965) defines a licensee as "a person who is privileged to enter or remain on land only by virtue of the possessor's consent." *Younce*, 724 P.2d at 996. In *Memel v. Reimer*, 538 P.2d 517 (Wash. 1975), the Court adopted the Restatement (Second) of Torts § 342 to define a landowner's responsibility to licensees for dangerous conditions on the land. That section provides:

> A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,
>
> (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
>
> (b) he [or she] fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and
>
> (c) the licensees do not know or have reason to know of the condition and the risk involved.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT – 7

Restatement (Second) of Torts § 342 (1965), as quoted in *Younce*, 724 P.2d at 996.

The duties in Restatement (Second) of Torts § 342 turn on the respective knowledge of the landowner and licensee. "First, the landowner must know, or have reason to know, about a hidden danger created by a natural condition." *Ticani*, 875 P.2d at 628. In *Memel*, the Washington Supreme Court described the extent of the duty arising from this knowledge:

> We are not requiring that the occupier either prepare a safe place, or that he [or she] affirmatively seek out and discover hidden dangers. What we do impose is a duty to exercise reasonable care where there is a known dangerous condition on the property and the occupier can reasonably anticipate that [the] licensee will not discover or realize the risks. Under these circumstances, the landowner can fulfill his [or her] duty by either making the condition safe or by warning [the] licensee of the condition and its inherent risks.

*Memel*, 538 P.2d 517. "Second, the licensee must not know, or have reason to know, about the dangers presented by a natural condition." *Ticani*, 875 P.2d at 628. "A licensee's full understanding that a natural condition is dangerous ends any liability of the landowner for the condition." *Id.*

> [E]ven though a dangerous condition is concealed and not obvious, and the possessor has given the licensee no warning, if the licensee is in fact fully aware of the condition and the risk, there is no liability to him [or her].

*Id.* (quoting Restatement (Second) of Torts § 342, comment l).

//

//

ORDER DENYING MOTION FOR SUMMARY JUDGMENT – 8

# DISCUSSION

As an initial matter, the Court takes up Defendants' motions to strike and for an adverse inference, ECF No. 86 at 15–20. Finding neither meritorious, the Court then turns to Defendants' motion for summary judgment, ECF No. 43.

## A. Motion to Strike Declaration

First, Defendants ask the Court to strike Plaintiff's Declaration as a sham affidavit that "flatly contradict[s]" Plaintiff's deposition testimony. ECF No. 86 at 19 (citing *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989 (9th Cir. 2009). Specifically, Defendants take issue with Plaintiff's declaration that "I assumed that the opening had been fixed prior to falling into the hole, and <u>I was unaware it existed prior to falling in at the moment right before I fell in</u>." ECF No. 87 at 19 (quoting ECF No. 57 at 2). This, Defendants argue, is flatly contradicted by Plaintiff's deposition testimony and his submitted video evidence. The Court disagrees. Instead, at his deposition, Plaintiff repeatedly acknowledged that he visited the Wreckage stage on the day of the performance and knew of uneven staging and gaps but avoided acknowledging that he knew the particular gap at issue was present at the time of the performance. *See* ECF No. 45-1 at 18 ("Sir, as I've mentioned many other times, there were numerous 4-by-8 and 8-by-8 missing sections in that stage [when he visited the stage earlier in the day]. So, yes, was it in the exact state that it was when I was on the stage earlier? I don't know. Was it there? Yes, I'm

sure it was there as part of those other gaps."). Moreover, although the referenced video, taken by Plaintiff, shows the gap, the video does not conclusively establish that Plaintiff saw and acknowledged the gap. *See also* ECF No. 57 at 2 ("During Keys N Krates' performance, my attention was focused on my iPad in my left hand because I was controlling the sound levels. I briefly scanned the crowd with my iPhone in my right hand to document the crowd reactions for Keys N Krates' social media. I do not recall observing the gap in the stage when I took the video."). The Court does not find that the Declaration is flatly contradicted by either Plaintiff's deposition or the submitted video. Accordingly, the motion to strike the declaration is denied, though the Court notes that the Declaration is not dispositive to its resolution of the motion for summary judgment.

**B.      Motion to Strike Deposition Testimony**

Second, Defendants Live Nation and CEG are troubled that Plaintiff's counsel stated on the record that he was representing fact witnesses for purposes of their depositions and therefore claimed privilege at the depositions when those witnesses were asked about conversations with counsel. ECF No. 86 at 15–18. In his supplemental briefing on that issue, Plaintiff's counsel explains that although he did not seek written consent form these fact witnesses, he did not consider written consent necessary under RPC 1.7 given that his representation would not be materially limited as a result of his duties to each of the other clients. ECF No. 103.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT – 10

After review of counsel's declaration, in which he notes that the fact witnesses had no adverse interest against Plaintiff and all had similar evidence, the Court is satisfied that counsel did not run afoul of his ethical duties, though best practice in the future would be for counsel to confirm in writing that he has explained to each of his clients even the more remote possibilities that his representation may be limited by a conflict of interest. Regardless, the remedies Defendant's seek— exclusion or further discovery—are either heavy handed or else would infringe on the *clients'* interests in keeping their privileged communications secret. The motion to strike is denied.

C.   **Motion for Adverse Inference**

Next, Defendants Live Nation and CEG urge the Court to take an adverse inference regarding purportedly spoliated materials. ECF No. 86 at 12–15. Specifically, Defendants argue that although Plaintiff's counsel provided an electronic download all the photographs and videos Mary Mahan (Plaintiff's fiancée) took that day, the sequential numbering of those files reveals that certain photos and videos had been deleted. *Id.* Ms. Mahan's explanation is that she "contemporaneously" deleted these photos. *See* ECF No. 86. In other words, she would take a handful of photos and videos, would look at them, and delete those she found redundant or unappealing The Court finds this to a reasonable explanation, and Defendants have provided no persuasive evidence to put the

explanation in doubt. As such, at least some of the photos and videos may have been deleted before any duty to preserve was triggered. *Suroqiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1005 (D. Ariz. 2011) ("[T]he duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation."). As for the others, even if Ms. Mahan anticipated future litigation, this does not obviate the fact that she may have deleted duplicates, blurry images, and the like. As such, the Court denies the request to take an adverse inference that the missing files would be beneficial to Defendants.

D.  **Summary Judgment**

The Court begins its analysis of the summary judgment motion by determining Plaintiff's status at the 2017 Paradiso Festival. Here, construing the available evidence in Plaintiff's favor, the Court determines that Plaintiff is a business invitee, as he was there for a business purpose that benefited the possessor of the area. Such a finding is in line with Washington's business invitee cases, such as *Afoa v. Port of Seattle*, 296 P.3d 800 (Wash. 2013). In *Afoa*, the Washington Supreme Court reviewed, at the summary judgment stage, the claims of an airline employee working at Sea-Tac Airport. There, he operated a "tug" or "pushback," the powered industrial vehicle that pushes the airplanes back from the passenger gates. Even though Afoa had no direct employer-employee relationship with the Port of Seattle/Sea-Tac, the Washington Supreme Court explained that:

> Afoa was plainly a business invitee because he was on the premises for a purpose connected to business dealings with the Port. There is simply no genuine dispute in the record on this point. The Port is in the business of running an airport, and Afoa was doing airport work. Indeed, he was doing work (loading and unloading airplanes) without which Sea–Tac Airport could not operate. Afoa was unquestionably on the premises for a purpose connected to business, so he is a business invitee. On this record, no reasonable jury could find otherwise.

*Afoa*, 296 P.3d at 468.

Given this, the possessor of the land owes a duty to exercise reasonable care to protect Plaintiff from unreasonable risk of harm, subject to the elements set out in Sections 343 and 343A of the Restatement. The Court thus turns to who was a possessor of the land.

Washington courts have defined the "possessor of land" as "a person who is in occupation of land with intent to control it." *Jarr v. Seeco Const. Co.*, 666 P.2d 392, 394 (Wash. App. 1983) (quoting Restatement (Second) of Torts § 328E) (emphasis added); *see also Adamson v. Port of Bellingham*, 438 P.3d 1195 (2016). Here, Defendants were owned and occupiers the land, and they each demonstrated an intent to control the land, using and changing it with the intent of putting on the 2017 Paradiso Festival at which Plaintiff was injured. As such, Defendants are not entitled to summary judgment on this point.

Even so, Defendants argue, Plaintiff is barred by assumption of the risk. ECF No. 43 at 5–15. Washington law recognizes four categories of assumption of risk: (1) express, (2) implied primary, (3) implied reasonable, and (4) implied

ORDER DENYING MOTION FOR SUMMARY JUDGMENT – 13

unreasonable. *Erie v. White*, 966 P.2d 342, 344 (Wash. App. 1998). The last two are "nothing but alternative names for contributory negligence." *Home v. N. Kitsap Sch. Dist.*, 965 P.2d 1112, 1118 (Wash. App. 1998). To find implied primary assumption of the risk, "[t]he evidence must show the plaintiff (1) had full subjective understanding (2) of the presence and nature of the specific risk, and (3) voluntarily chose to encounter the risk." *Hvolboll v. Wolff Co.*, 347 P.3d 476, 481–82 (Wash App. 2015) (quoting *Kirk v. Washington State University*, 746 P.2d 285, 288 (1987)).

But Plaintiff persuasively argues against application of implied assumption of the risk. First, as Plaintiff notes in his briefing, it is necessary to distinguish between implied primary assumption of risk and implied unreasonable (or implied reasonable) assumption of risk. While the former may operate as a complete bar to recovery, the latter is often a question best left for the jury to consider in weighing comparative negligence. *See Gleason v. Cohen*, 368 P.3d 531, 535 (Wash. App. 2016).

> Trial courts are rightfully wary of requests to instruct the jury on implied primary assumption of the risk. That doctrine, if not boxed in and carefully watched, has an expansive tendency to reintroduce the complete bar to recovery into territory now staked out by statute as the domain of comparative negligence.

*Id.* (quoting *Dorr v. Big Creek Wood Prods., Inc.*, 927 P.2d 1148 (Wash. App. 1996); *see also Kirk v. Washington State Univ.*, 746 P.2d 285, 287 (1987).

ORDER DENYING MOTION FOR SUMMARY JUDGMENT – 14

Second, to qualify for implied primary assumption of risk, the risk assumed by plaintiff must have been inherent to the activity. *Gleason*, 368 P.3d at 534. If the risk was negligently created by the defendant and the plaintiff knowingly chooses to proceed regardless, he has at most engaged in implied unreasonable assumption of risk, and his claim is not barred.

> [I]mplied reasonable and unreasonable assumption of risk arise where the plaintiff is aware of a risk that already has been created by the negligence of the defendant, yet chooses voluntarily to encounter it. In such a case, plaintiff's conduct is not truly consensual, but is a form of contributory negligence, in which the negligence consists of making the wrong choice and voluntarily encountering a known unreasonable risk.

*Scott v. Pac. W. Mountain Resort*, 834 P.2d 6, 14 (1992).

In *Gleason*, for example, the plaintiff hired the defendant to help remove some trees from his property. 386 P.3d at 533. The plaintiff told the defendant that he had improperly placed a choke chain on the tree to be removed, and that doing so was unsafe for additional other reasons, but plaintiff proceeded to assist with the tree removal anyway. *Id.* at 533–34. The tree fell on him. In overturning the trial court's finding of implied primary assumption of risk, the court said that while the possibility of a tree falling on someone is an inherent risk of tree removal, "whether implied primary assumption of risk applies does not depend on whether the plaintiff has voluntarily encountered a known risk. It depends on whether the risk the plaintiff encountered was inherent in the activity in which the plaintiff was engaged.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT – 15

And implied primary assumption of risk does not apply when the plaintiff has knowingly encountered an additional risk that the defendant has created." *Id.* at 300. Even so, "[i]mplied primary assumption of risk occupies a very 'narrow niche. In most situations, a plaintiff who has voluntarily encountered a known specific risk has, at worst, merely failed to use ordinary care for his or her own safety, and an instruction on contributory negligence is all that is necessary and appropriate.' *Id.* at 536 (quoting *Dorr*, 927 P.3d at 426).

To illustrate, in *Scott*, the plaintiff was injured while skiing a "slalom race course which had been laid out by the ski school owner, allegedly according to instructions from an agent of the ski resort." *Scott*, 834 P.2d at 8 (1992). He hit a shed that was located too closely to the course. *Id*. In overturning a grant of summary judgment for both the resort and the ski school, the court held that "while participants in sports are generally held to have impliedly assumed the risks inherent in the sport, such assumption of risk does not preclude a recovery for negligent acts which unduly enhance such risks." *Id.* at 15 (1992).

Here, the Court cannot find based on the evidence presented that falling into this gap—with its precise dimensions, narrow walkway, and lack of reflective tape—is so inherent to that activity of working as a band's sound engineer at a festival. Moreover, Plaintiff, argues that he had reason to believe the gap would be gone. *See* ECF No. 57 ("Since I had complained to multiple people during the sound

ORDER DENYING MOTION FOR SUMMARY JUDGMENT – 16

check seven hours earlier about the missing stage deck pieces, and that those were safety concerns that needed to be fixed, and the fact that I had been told that more stage decking was coming, I assumed that the gaps had been filled with stage decking prior to falling into the hole."). Whether or not Plaintiff honestly believed that the gap would be gone requires the Court to make a credibility finding that is prohibited at the summary judgment stage.

Nor, for that matter, can the Court determine as a matter of law that Plaintiff was contributorily negligent. "In determining a plaintiff's contributory negligence, 'the inquiry is whether or not he exercised that reasonable care for his own safety which a reasonable man would have used under the existing facts and circumstances, and, if not, was his conduct a legally contributing cause of his injury.'" *Dunnington v. Virginia Mason Med. Ctr.*, 389 P.3d 498, 503 (Wash. 2017) (quoting *Rosendahl v. Lesourd Methodist Church*, 412 P.2d 109 (Wash. 1966). "Whether there has been negligence or comparative negligence is a jury question unless the facts are such that all reasonable persons must draw the same conclusion from them, in which event the question is one of law for the courts." *Id.* (quoting *Hough v. Ballard*, 31 P.3d 6 (2001)). The Court does not find that Defendants have met that high bar, and it makes little sense for the Court to substitute for the jury on the question of *whether* Plaintiff was contributorily negligent but then submit the question of *degree* to the jury.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT – 17

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' motions to strike and for an adverse inference, **ECF No. 86 at 15–20**, are **DENIED**.

2. Defendants' Motion for Summary Judgment, **ECF No. 43**, is **DENIED**.

**IT IS SO ORDERED**. The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 22nd day of August 2022.

_____
SALVADOR MENDOZA, JR.
United States District Judge